# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

**JOHN JEREMY ADAMS,**
      Petitioner,

**v.**

**UNITED STATES OF AMERICA,**
      Respondent.

**Case No. 6:22-cv-8013-CLM**
**(6:19-cr-219-CLM-JHE)**

## MEMORANDUM OPINION

John Jeremy Adams moves to vacate, set aside, or otherwise correct his sentence under 28 U.S.C. § 2255. (Doc. 1). He also asks for the court to appoint him counsel. (Doc. 7). Around six months after he filed his original § 2255 motion, Adams filed an amended motion that added four new claims. (Doc. 4). Adams then moved for leave to amend his § 2255 motion again, asking the court to allow him to add another new claim contesting how his sentencing guidelines were calculated. (Doc. 10). The Government opposes Adams' motions for leave to amend his original § 2255 motion, contending that Adams' new claims for relief are time-barred. (Docs. 11, 16).

For the reasons stated within, the court **DENIES** Adams' motion for appointment of counsel (doc. 7) and motions to amend his § 2255 motion to add new claims for relief (docs. 4, 10). The court **DISMISSES WITH PREJUDICE** the claims raised in Adams' original § 2255 motion (doc. 1) and will enter a separate order directing the Clerk of Court to close this case.

## BACKGROUND

1. *Adams' conviction + sentencing*: Adams was the co-owner, President, and Chief Executive Officer of compounding pharmacy Global. (Doc. 1, p. 3 in Case No. 6:19-cr-219). In April 2019, Adams, along with nine co-defendants, was charged with participating in a massive health care fraud conspiracy involving Global. (*See id.*).

Adams pleaded guilty to Counts 1, 2–11, 16–19, 23, 26–29, 88, and 89–96 of the indictment. (Doc. 149 in Case No. 6:19-cr-219). Adams' original plea agreement was a binding plea under Criminal Rule 11(c)(1)(C) in which both Adams and the Government stipulated that Adams would receive a custodial sentence of 120 months and forfeit $2.1 million. (*See id.*, p. 23). The plea agreement then stated, "[i]n the event the Court rejects this plea agreement, either party may elect to declare the agreement null and void. Should the defendant so elect, the defendant will be afforded the opportunity to withdraw his guilty plea pursuant to the provisions of Fed. R. Crim. P. 11(d)(2)(A)." (*Id.*, p. 24). And as part of the plea agreement, Adams waived his right to appeal his sentence unless his sentence exceeded any statutory maximum or the applicable Sentencing Guidelines range. (*Id.*, p. 26).

Adams' sentencing was set for December 2020, which was two months before trial was scheduled for four of Adams' co-defendants. During the sentencing hearing, Judge Coogler (Adams' sentencing judge) questioned why the Government was proceeding with Adams' sentencing before his co-defendants' trial. (Doc. 1, pp. 20–21). Judge Coogler then said he would continue Adams' sentencing because he needed "to see the full picture, and I'm afraid I can't get there right now just sitting here looking at this." (*Id.*, p. 21). Though Judge Coogler stated he thought there was "a very significant probability that I'm going to give him 120 months," he wasn't "prepared to do it yet." (*Id.*, p. 22).

The court ultimately held Adams' sentencing hearing in April 2021. Before sentencing, Judge Coogler informed the parties that he believed a 120-month sentence for Adams was far too low and that he could not accept it. (*Id.*, p. 30). So at sentencing, Judge Coogler informed Adams that he was free to go to trial or make a different plea agreement with the Government. (*Id.*). The Government then informed Judge Coogler that the parties had reached a new plea agreement that included the same terms as the old plea agreement except that Adams' stipulated sentence would now be 170 months' imprisonment. (*Id.*).

Judge Coogler confirmed that Adams agreed to the amended plea agreement:

| | |
|---|---|
| THE COURT: | And it's my understanding that you and the government have got some sort of plea that the only thing that will change will be the amount of time you will spend in prison. Is that correct? |
| AUSA: | Yes, your honor. |
| THE COURT: | And what is that? |
| AUSA: | 170 months. |
| THE COURT: | Do you agree to that plea? |
| MR. ADAMS: | Yes, sir. |
| THE COURT: | Do you understand that if you agree to that, all the rest of the terms and conditions of the plea agreement, the facts stated in it, all that will remain the same? The only change will be instead of 120 months it will be 170 months. Do you have any questions about that? |
| MR. ADAMS: | No, your honor. |
| THE COURT: | Now, do we have an amended plea agreement that is binding on the court for 170 months? Defense? |
| DEFENSE COUNSEL: | That is correct, your honor. |
| THE COURT: | Government? |
| AUSA: | Yes, your honor. |
| THE COURT: | I will accept the 170 months. |

(*Id.*, pp. 30–31).

After Judge Coogler said he would accept the stipulated sentence, defense counsel spoke on Adams' behalf asking that Adams be housed close to his children, given a chance to voluntarily surrender, and be enrolled in substance abuse programs in prison. (*Id.*, pp. 31–32). Counsel also stated that

Adams would like to "make a comment to the court." (*Id.*, p. 31). So Judge
Coogler offered Adams an opportunity to speak:

> THE COURT: All right. Anything you want to say in mitigation
> or otherwise before I pronounce the sentence of
> law upon you?
>
> MR. ADAMS: Me?
>
> THE COURT: Yes.
>
> MR. ADAMS: I just want to say thank you for giving me a
> chance to resolve this today. Thank you.
>
> THE COURT: You're welcome.

(*Id.*, p. 33).

Judge Coogler then imposed the 170-month sentence. Judge Coogler
concluded sentencing by advising Adams that he had the right to appeal his
sentence within 14 days of the entry of judgment, but that Adams may have
waived some or all of his rights to appeal as part of his plea agreement. (*Id.*,
pp. 37–38). The court entered judgment on April 29, 2021, (*see* doc. 332 in Case
No. 6:19-cr-219), and Adams did not file a direct appeal.

2. *Section 2255 proceedings*: Adams filed his original § 2255 motion on
April 20, 2022. (Doc. 1, p. 12). Adams' motion asserted that (a) the court's
rejection of his original 120-month stipulated sentence was a miscarriage of
justice, (b) that there is a disparity between Adams' sentence and his co-
defendants' sentences, (c) that trial counsel was ineffective, and (d) that
statements made by the Government supported reducing Adams' sentence to
120 months' imprisonment. (*Id.*, pp. 4–12). The Government responded to
Adams' motion, arguing that Adams waived his challenge to his 170-month
sentence and that Adams had showed no constitutional deficiencies in
counsel's performance or prejudice. (Doc. 3).

4

Six months later, Adams sought to add these claims for relief: (1) the Supreme Court's decision in *Ruan v. United States* altered the mens rea required to convict Adams of health care fraud; (2) Adams' counsel performed ineffectively by failing to inform Adams of the benefits/detriments of appealing; (3) Adams' counsel performed ineffectively by not offering a good faith defense during plea negotiations; and (4) counsel performed ineffectively by not investigating whether Adams' use of preprinted prescription forms complied with state and federal law. (Doc. 4, pp. 3–7). According to Adams, his *Ruan*-based claim was timely because it was filed within one year of the Supreme Court's decision in *Ruan*, and his other new claims were timely under the doctrines of equitable tolling and actual innocence. (*Id.*, pp. 3–4).

About a year later, Adams sought leave to amend his § 2255 motion again. (Doc. 6). Judge Coogler then retired from the bench, and this case was reassigned to me. (Doc. 8). I gave Adams until January 29, 2025, to file a motion for leave to amend his § 2255 motion and ordered the Government to respond to the motion two weeks later. (Doc. 9). Adams filed his motion by the January 29 deadline and asked to add a claim that his guidelines range was erroneously calculated using intended fraud loss rather than actual loss. (Doc. 10). The Government responded that the court should deny Adams' leave to amend his original § 2255 motion because each of Adams' new claims is untimely and fails to relate back to Adams' original motion. (Docs. 11, 16).

## ANALYSIS

In general, § 2255 motions are governed by a one-year statute of limitations that runs from "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). The court entered Adams' judgment of conviction on April 29, 2021, and Adams didn't file a direct appeal. So Adams' conviction became final on May 13, 2021. *See Murphy v. United States*, 634 F.3d 1303, 1307 (11th Cir. 2011); Fed. R. App. P. 4(b)(1)(A). The parties thus agree that the claims brought in Adams' April 20, 2022, § 2255 motion are timely. But they dispute whether Adams may bring the claims he raised for the first time in his October 2022 and January 2025 motions. The court will discuss the timeliness of the claims in Adams' motions for leave to amend before it addresses the merits of Adams' original § 2255 motion.

## I.    Motions for Leave to Amend

Rule 15 of the Federal Rules of Civil Procedure governs Adams' requests to add new grounds for relief in his § 2255 motion. *See* Rule 12 of the Rules Governing Section 2255 Proceedings ("The Federal Rules of Civil Procedure . . . to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."). Rule 15 says that the court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). So the court will generally grant leave to amend unless the court finds "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *McKinley v. Kaplan*, 177 F.3d 1253, 1258 (11th Cir. 1999) (quotations omitted). The Government argues that the court should deny Adams' motions to amend on futility grounds because each new claim Adams seeks to add is time-barred.

### A.    Relation Back

Because Adams' original § 2255 motion was timely, the claims Adams seeks to add are timely if they relate back to Adams' original motion. *See* Fed. R. Civ. P. 15(c). "An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "[F]or an untimely § 2255 claim to 'relate back' under Rule 15(c), the untimely claim must have more in common with the timely claim than the mere fact that they arose out of the same trial and sentencing proceedings." *United States v. Davenport*, 217 F.3d 1341, 1344 (11th Cir. 2000). "Instead, in order to relate back, the untimely claim must have arisen from the same set of facts as the timely filed claim, not from separate conduct or a separate occurrence in both time and type." *Id.* (quotations omitted).

Adams' original § 2255 motion raised four grounds for relief: (a) the court's rejection of the 120 month binding plea agreement was a miscarriage of justice; (b) there was a disparity of sentencing between Adams and his co-defendants; (c) counsel was ineffective for refusing to allow Adams and a friend

to speak at sentencing, not objecting to the 170-month sentence, and not objecting to statements that the pharmacies sold and transferred to employees were "sham companies"; and (d) that statements made by the Government supported reducing Adams' sentence to 120 months' imprisonment. The claims Adams seeks to add in his motions for leave to amend are (a) *Ruan v. United States* established that Adams' plea agreement had an insufficient factual basis to convict Adams of health care fraud, (b) Adams' attorney performed deficiently by not advising Adams of the benefits and detriments of appealing, (c) Adams' attorney performed deficiently by not proffering a good faith defense to the kickback counts during plea negotiations, (d) counsel performed ineffectively by not investigating whether Adams' use of preprinted prescription forms complied with state and federal law, and (e) Adams' guidelines range was erroneously calculated using intended fraud loss rather than actual loss.

Rule 15(c) is not intended "to be so broad to allow an amended pleading to add an entirely new claim based on a different set of facts." *Farris v. United States*, 333 F.3d 1211, 1215 (11th Cir. 2003). And Adams' new claims do not "arise from the same set of facts" as his timely filed claims, "but from separate conduct or a separate occurrence in both type and time." *See id.* (quotations omitted). For example, neither Adams' *Ruan*-based claim nor his guidelines calculation claim has anything in common with the ineffective assistance of counsel and sentencing-related claims brought in Adams' original § 2255 motion. To be sure, both Adams' original § 2255 motion and his first motion for leave to amend raise ineffective assistance of counsel claims. But raising "[a] claim of ineffective assistance of counsel in a timely filed motion does not mean that any claims of ineffective assistance of counsel that are not timely raised necessarily relate back." *Thomas v. United States*, 2018 WL 11301192, at *3 (11th Cir. Nov. 19, 2018) (Julie Carnes, J., order denying certificate of appealability). And nothing in Adams' original motion references counsel's failure to advise Adams of the benefits of appealing, failure to present a good faith defense to the kickback counts, or failure to investigate Adams' use of preprinted prescription forms. So the court finds that none of Adams' new claims relate back to the claims brought in Adams' original § 2255 motion. *See Farris*, 333 F.3d at 1215 ("new claims alleging different trial errors" do not relate back to timely filed § 2255 motion).

**B.    Timeliness**

Because the claims Adams seeks to add do not relate back to his original motion, they must independently satisfy the requirements of 28 U.S.C. § 2255(f) to be timely. As discussed, the general rule is that § 2255 motions must be filed within one-year of "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). But a claim for § 2255 relief is also timely if it is filed within one-year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). Adams asserts that his *Ruan*-based claim meets the requirements of § 2255(f)(3). So the court will address the timeliness of Adams' *Ruan*-based claim before it addresses the timeliness of the other claims Adams seeks to add in his motions to amend.

1. *Ruan-based claim*: In *Ruan*, the Supreme Court held that to convict a doctor for unlawfully dispensing controlled substances under 21 U.S.C. § 841, "the Government must prove beyond a reasonable doubt that the [doctor] knew that he or she was acting in an unauthorized manner, or intended to do so." *Ruan v. United States*, 597 U.S. 450, 454 (2022). Adams says that after *Ruan* his plea agreement included an insufficient factual basis to convict him of health care fraud because while it stated that Adams incentivized prescribers to issue prescriptions for medically unnecessary drugs, it did not state that the prescribers knowingly and intentionally illegally distributed a controlled substance. (Doc. 4, p. 4).

Neither the Supreme Court nor the Eleventh Circuit has held that *Ruan* applies retroactively to cases on collateral review. Thus, several district courts within this circuit have held that § 2255(f)(3) does not apply to *Ruan*-based claim. *See, e.g.*, *Allmond v. United States*, 2024 WL 3770514, at *2 (S.D. Ga. May 13, 2024); *Sanchez v. United States*, 2023 WL 8418024, at *8 (M.D. Ala. Oct. 12, 2023). This court agrees. So the court finds that Adams' *Ruan*-based claim isn't timely under § 2255(f)(3).

Even if Adams' *Ruan* claim were timely, the court would still deny Adams' motion for leave to add that claim to his § 2255 motion on futility grounds. As the Government points out, 21 U.S.C. § 841, the statute the Supreme Court interpreted in *Ruan*, is not at issue here. And on remand from the Supreme Court, the Eleventh Circuit held that the inadequate jury instructions in *Ruan* did "not affect the defendants' convictions for conspiracy to commit health care fraud." *United States v. Ruan*, 56 F.4th 1291, 1299 (11th Cir. 2023) ("*Ruan II*"). As explained by the Circuit Court, "[a] health care fraud conspiracy is fundamentally about the submission of false medical claims to health care benefit programs." *Id.* So "whether or not the defendants had subjective knowledge that their prescriptions were outside the 'usual course'" was "irrelevant to whether or not the defendants also (1) falsely certified that patients had cancer; (2) falsely billed for office visits when the doctor was not present; (3) falsely billed insurers for unnecessary medical tests; or (4) falsely billed insurers for office visits to prescribe unnecessary drugs." *Id.* at 1300.

As in *Ruan II*, the facts supporting Adams' health care fraud convictions have nothing to do with whether prescribers were dispensing controlled substances in an unauthorized manner. In his plea agreement, Adams agreed that:

- He directed employees and family members to get medically unnecessary prescriptions (including purportedly individualized compounded drugs) to be billed by GMES, Global, and Affiliate Pharmacies (with proceeds going to Adams and others). To facilitate this scheme, Adams would identify high-reimbursing drugs, such as Medi-Derm, Camphomex, and Silapak, and instruct sales representatives and other employees to get prescriptions for these drugs for themselves, family members, and friends regardless of medical necessity.

- He hired sales representatives on high-paying insurance, Medtronic and Norvatis, and would then push these sales representatives to get certain high-reimbursing, medically unnecessary prescriptions.

- He allowed billers to alter prescriptions to substitute lower-paying drugs or ingredients for higher paying ones, or simply by adding high-reimbursing drugs or ingredients to the prescription.

- He caused GMES, Global, and affiliate pharmacies to evade and obstruct PBM efforts to police fraud, including by routinely waiving co-pays, which eliminated the financial incentive for patients to reject medically unnecessary drugs.

(Doc. 149 in Case No. 6:19-cr-219, pp. 13–21).

While Adams' plea agreement asserts that some of the medically unnecessary refills and altered prescriptions were for drugs that contained controlled substances, such as Ketamine and Tramadol, (*see id.*, p. 8), Adams' health care fraud conviction didn't hinge on the fact that some of the prescriptions at issue were for controlled substances. Instead, the main medically unnecessary prescriptions Adams was accused of directing employees and their families to obtain were prescriptions for pain, wound, and scar creams. (*Id.*, pp. 13–15). In short, Adams admitted in his plea agreement that he knew that billers were altering prescriptions and that he would direct Global employees to obtain high reimbursing but medically unnecessary prescriptions for themselves and their family members. So there was an adequate factual basis for Adams' health care fraud guilty plea.

2. *Other claims*: None of the limitations periods found in 28 U.S.C. § 2255(f)(2)-(4) apply to the other new claims Adams seeks to add in his motions for leave to amend. And as explained, these claims are untimely under § 2255(f)(1) because Adams moved for leave to amend more than a year after his judgment of conviction became final. So these claims are time-barred unless Adams can show that he is entitled to equitable tolling or that he is actually innocent.

### C.    Equitable tolling + Actual Innocence

The one-year limitation period for a § 2255 motion may be equitably tolled "if a petitioner establishes *both* extraordinary circumstances and due diligence." *Diaz v. Sec'y for Dep't of Corr.*, 362 F.3d 698, 702 (11th Cir. 2004). A movant may also raise an untimely claim if he makes "a convincing showing of actual innocence" by presenting new evidence that "persuades the district court that . . . no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).

1. *Equitable tolling*: Adams' first motion for leave to amend says that he's entitled to equitable tolling because he suffers from untreated anxiety and was struggling to adjust to his first year in prison when the deadline to file his claims under § 2255 expired. Equitable tolling is an "extraordinary remedy which is typically applied sparingly." *Dodd v. United States*, 365 F.3d 1273, 1282 (11th Cir. 2004). And Adams has failed to show that his anxiety or difficulty in adjusting to prison life are extraordinary circumstances that justify equitable tolling. As the Government points out, Adams managed to raise four timely claims in his original § 2255 motion. And Adams has not explained why he was able to timely file those claims during the one-year limitation period, but not timely file the claims that he now seeks to add in his amended motions. *See Johnson v. United States*, 2022 WL 4483113, at *2 (11th Cir. Sept. 27, 2022) (rejecting equitable tolling argument because the movant "has not explained how he was able to file [some criminal pleadings] during the one-year limitation period, but not timely file his § 2255 motion"). Nor has Adams made any showing that he acted with due diligence. Thus, the court finds that Adams isn't entitled to equitable tolling.

2. *Actual innocence*: Adams also says the court should consider the merits of the claims he seeks to add in his motion for leave to amend because he is actually innocent of the kickback charge (Count 88). Adams asserts that he can show his actual innocence of this charge because he relied on the advice of counsel when he hired Bridget McCune, the spouse of a physician prescriber, as a sales representative. According to Adams' declaration, his good-faith effort to follow legal counsel's advice shows that he did not "have the intent to violate the anti-kickback laws." (Doc. 4, p. 7).

Adams' plea agreement asserted that Adams participated in a kickback conspiracy in two ways. First, the plea agreement says that Adams paid direct kickbacks by paying Nurse Practitioner Edenfield cash for issuing prescriptions. (Doc. 149, pp. 10–11 in Case No. 6:19-cr-219). Edenfield then issued multiple medically unnecessary prescriptions to be filled and billed by GMES and Global. (*See id.*). Second, the plea agreement stated that Adams caused indirect kickbacks by paying commission payments to McCune who obtained an overwhelming majority of prescriptions from her prescriber-husband. (*Id.*, pp. 11–13).

Adams' declaration asserting his actual innocence addresses only the indirect kickback scheme and not the direct kickbacks, which were the payments to Edenfield to induce her to write prescriptions. And while Adams' plea agreement refers to both types of kickbacks, the kickback charge in the indictment tied the kickback conspiracy to the payments to Edenfield. (Doc. 1, ¶¶ 97–100 in Case No. 6:19-cr-219). In fact, the kickback charge in the indictment does not even mention Adams' commission payments to McCune for prescriptions written by her husband. (*See id.*). And the record proves that Adams conspired to pay Edenfield kickbacks. For example, Adams admitted in his plea agreement that he "paid kickbacks and bribes to" Edenfield "in return for N.P. Edenfield referring and issuing prescriptions for drugs to be paid for in whole or in part by Federal health care programs." (Doc. 149, p. 4 in Case No. 6:19-cr-219). Plus, Edenfield testified at the trial of two of Adams' co-defendants that she received cash kickbacks for writing prescriptions and that Adams was involved in the conspiracy. (Doc. 410, pp. 177–182 in Case No. 6:19-cr-219 (testimony that Adams approached Edenfield about writing prescriptions for his pharmacy, that Edenfield sometimes signed blank prescriptions at Adams' request, and that Edenfield received thousands of dollars in cash for the prescriptions she wrote)). So even setting aside the plea agreement's assertions about the commission payments to McCune, Adams has failed to show that he is innocent of conspiring to pay kickbacks.

The court is also unconvinced that Adams' declaration proves that he is actually innocent of paying indirect kickbacks to McCune. Adams says that he contacted counsel because he was concerned about the legality of hiring McCune, a physician's spouse, as a sales representative. (Doc. 4, p. 7). Counsel then told Adams that it was legal for him to hire McCune as long as she was

designated as a W-2 employee and no funds obtained from McCune or her husband's account were moved from one account to the other. (*Id.*). Counsel explained that the best way to remain compliant with the law was to switch Adams' employees from being IRS 1099 employees to W-2 employees. (*Id.*). Adams says that he followed counsel's advice by switching the pay structure of all sales representatives and directly associated accounts to W-2's. (*See id.*).

But in his plea agreement, Adams admits he did more than simply hire a physician's spouse as a W-2 employee. Adams also paid McCune commission for prescriptions written by her husband understanding that these payments would incentivize McCune's spouse to issue medically unnecessary prescriptions that Global would fill. (Doc. 149, p. 11 in Case No. 6:19-cr-219). And in October and November 2014, "the <u>overwhelming majority</u> of prescriptions [McCune] obtained were issued by her Prescriber-husband, and . . . for those months alone, her calculated commission and bonus was $47,953 and $55,221 respectively." (*Id.*). Adams was warned that this conduct was illegal but continued to pay spouse sales representatives in this manner. (*Id.*, p. 12). Adams then attempted to obscure his arrangement with McCune by changing her position to "National Field Trainer" and stating in a letter that he would no longer pay her for her prescriber-husband's prescriptions. (*Id.*). Adams, however, continued paying McCune for her husband's prescriptions, and an April 2015 Commission Report showed that 96% of the 234 prescriptions McCune obtained were issued by her husband for a commission amount of $39,138. (*See id.*). As counsel did not advise Adams that he could pay a sales representative for prescriptions her husband issued and Adams admitted that he was warned that this conduct was illegal, the court finds that Adams has not shown that he is actually innocent of the indirect kickback scheme recounted in his plea agreement.

—

In sum, Adams has not shown that he is entitled to equitable tolling of the limitation period or that he is actually innocent of the kickback charge. So the court will **DENY** Adams' motions for leave to amend his original § 2255 motion (docs. 4, 10) because the claims Adams seeks to add are time-barred.

## II.    Original § 2255 Motion

Again, Adams timely raised four claims in his original § 2255 motion: (a) the court's rejection of the 120 month binding plea agreement was a miscarriage of justice; (b) there was a disparity of sentencing between Adams and his co-defendants; (c) counsel was ineffective for refusing to allow Adams and a friend to speak at sentencing, not objecting to the 170-month sentence, and not objecting to statements that the pharmacies sold and transferred to employees were "sham companies"; and (d) statements made by the Government support reducing Adams' sentence to 120 months' imprisonment. The court will address Adams' sentencing related claims before it addresses Adams' claims of ineffective assistance of counsel.

### A.    Alleged Sentencing Errors

1. *Length of sentence*: Adams' first and third claims relate to the length of his sentence and work together. According to Adams, the court erred in rejecting his 120-month binding plea agreement, and the 120-month sentence he originally agreed to is the appropriate sentence.

Under Criminal Rule 11(c)(1)(C), the defendant and Government may enter a plea agreement that provides that "a specific sentence . . . is the appropriate disposition of the case." When presented with a plea agreement under Rule 11(c)(1)(C), "the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report." Fed. R. Crim. P. 11(c)(3)(A). If the court accepts the plea agreement, the court is bound by the agreed-upon sentence. Fed. R. Crim. P. 11(c)(4). But if the court rejects the plea agreement, it must in open court:

- inform the parties that the court rejects the plea agreement;

- advise the defendant personally that the court need not follow the plea agreement and give the defendant an opportunity to withdraw the plea; and

- advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.

Fed. R. Crim. P. 11(c)(5).

Adams asserts that the court was bound by the stipulated sentence in his original plea agreement because the court accepted that sentence when it accepted Adams' guilty plea to Counts 1, 2–11, 16–19, 23, 26–29, 88, and 89–96 of the indictment during the May 2020 change of plea hearing. Adams, however, hasn't pointed to anything in the record that suggests that the court accepted the 120-month sentence when the court accepted his guilty plea. Instead, the record shows that the court deferred a decision on the stipulated sentence until after reviewing the presentence report as Rule 11(c)(3)(A) allows. (*See* Doc. 1, pp. 41–43 (emails between counsel and courtroom deputy noting that the parties understood Judge Coogler's acceptance of binding pleas "is usually provisional until the Court has reviewed the PSR"); *see also id.*, pp. 21–22 (transcript from first sentencing hearing in which Judge Coogler states that he's not yet prepared to accept a 120-month sentence)).

After reviewing the presentence report, Judge Coogler decided that "120 months is extremely low, way too low—way lower than I will accept." (*Id.*, pp. 29–30). So Judge Coogler informed the parties that he was rejecting the 120-month agreed-upon sentence. (*See id.*). Judge Coogler then advised Adams that he was now free to withdraw his guilty plea and proceed to trial. (*See id.*). After hearing that the parties had reached a new agreement for a 170-month stipulated sentence, Judge Coogler advised Adams that if he were to accept that sentence, the other terms, facts, and conditions in the original plea agreement would remain the same. (*Id.*, p. 30). Adams did not state that he wanted to go to trial or ask for more time to consider the new plea deal. Instead, he stated that he agreed with the 170-month sentence and understood that the rest of his original plea agreement's terms would remain the same. (*Id.*). Thus, Judge Coogler complied with Rule 11; he neither erred by rejecting the original 120-month stipulated sentence nor by accepting the subsequent agreement on a 170-month sentence.

Because Adams did not withdraw his guilty plea and agreed to the 170-month sentence, he is bound by the post-conviction relief waiver in the plea agreement. (*See* Doc. 149, p. 26 in Case No. 6:19-cr-219 ("I waive and give up the right to challenge my conviction and/or sentence . . . or the manner in which my conviction and/or sentence . . . were determined in any post-conviction

proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255.")). Adams' waiver is valid as long as it was made "knowingly and voluntarily." *Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir. 2005). And Adams confirmed at the sentencing hearing that he agreed to a plea to a 170-month stipulated sentence. (Doc. 1, pp. 29–30). Adams also confirmed that he understood that other than the change in stipulated sentence all the other terms and conditions of his original plea agreement would remain the same. (*See id.*). Thus, Adams' plea was knowing and voluntary and his post-conviction relief waiver was valid. So Adams is precluded from challenging his 170-month term of imprisonment.

Adams has also procedurally defaulted any challenge to the length of his sentence because he didn't raise this issue in a direct appeal. *See Seabrooks v. United States*, 32 F.4th 1375, 1384 (11th Cir. 2022). "To overcome a procedural default, a defendant must show either (1) cause and prejudice, or (2) a miscarriage of justice, or actual innocence." *Id.* Adams has not shown cause for failing to object to the length of his sentence until now. Nor has he shown that the 170-month sentence caused him actual prejudice (*i.e.*, a reasonable probability that the result of the proceeding would have been different). *See Harris v. Comm'r, Ala. Dep't of Corrs.*, 874 F.3d 682, 688 (11th Cir. 2017). Instead, Adams is asking the court to reduce a term of imprisonment that he agreed to. Adams also cannot show that his sentence resulted in a miscarriage of justice, which "occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Spencer v. Sec'y, Dep't of Corrs.*, 609 F.3d 1170, 1180 (11th Cir. 2010). Adams' only actual innocence argument is that he is innocent of paying indirect kickbacks to McCune. As explained, Adams' evidence doesn't establish that he is innocent of the kickback charge. And overwhelming evidence of Adams' guilt of his other charges was recited in the factual basis of Adams' plea agreement. So Adams' challenge to the length of his sentence is procedurally defaulted.

Even if not waived or procedurally defaulted, Adams' challenge to the length of his sentence would fail on the merits. Adams' 170-month sentence was in the middle of his 151 to 188 months guideline imprisonment range. (*See* Doc. 1, p. 29). And courts "ordinarily expect a sentence within the Guidelines range to be reasonable," so Adams "has the burden of establishing the sentence is unreasonable in light of the record and the § 3553(a) factors." *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008).

Adams has failed to meet this burden. Adams suggests that his sentence is unreasonable because the Government originally agreed that 120-months was an appropriate sentence, the court suggested at the first sentencing hearing that it might accept a 120-month stipulated sentence, and the sentences of Adams' co-conspirators are lower than Adams' sentence. The parties' agreement that a 120-month sentence was appropriate was contingent on the court accepting the stipulated sentence. (Doc. 149, pp. 23–24 in Case No. 6:19-cr-219). And the court made clear during the December 2020 hearing that the court need more information about the scope of the conspiracy and involvement of each of the relative players before sentencing Adams or accepting the 120-month stipulated sentence. (Doc. 1, pp. 21-22). After presiding over a trial involving two of Adams' co-defendants and considering the facts in Adams' presentence report, the court found that the nature and circumstances of Adams' offenses plus his history and characteristics supported a 170-month sentence. (*Id.*, p. 36). Having reviewed the § 3553(a) factors, the record, and the sentences of Adams' co-defendants, the court finds that Adams' sentence wasn't substantively unreasonable.

2. *Disparity in sentencing*: Adams' other sentencing-related challenge is to the disparity between his sentence and the sentences of his co-defendants. Because Adams signed the post-conviction relief waiver and did not make this argument on direct appeal, Adams has both waived and procedurally defaulted this argument. Adams' challenge to the disparity in sentencing also fails on the merits. Again, Adams was identified as the leader of the health care fraud conspiracy. And the difference between Adams' sentence and the sentences of his co-defendants isn't so great as to warrant § 2255 relief. For example, co-defendant James Mays, Global's lead pharmacist, is serving an 82-month sentence after accepting responsibility and testifying at the trial of two co-conspirators, which Adams didn't do. And Jessica Linton, Global's billing

manager, was sentenced to 132 months' imprisonment. While Linton also had an important role in the conspiracy and unlike Adams went to trial, she was a mid-level executive when compared to Adams. So the sentences of Adams' co-defendants don't support reducing Adams' sentence.[1]

## B.    Ineffective Assistance of Counsel

Adams claims that his trial attorney was ineffective for refusing to allow Adams and a friend to speak at sentencing, not objecting to the 170-month sentence, and not objecting to statements that the pharmacies sold and transferred to employees were "sham companies." The two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984) applies to Adams' ineffective assistance of counsel claims. *See Devine v. United States*, 520 F.3d 1286, 1287 (11th Cir. 2008). Under *Strickland*, to show ineffective assistance of counsel, Adams must prove "(1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant." *Roe v. Flores-Ortega*, 528 U.S. 470, 476–77 (2000) (quotations and citations omitted).

1. *Reasonable performance*: In examining whether counsel's performance fell below an objective standard of reasonableness, the court should be "highly deferential." *Strickland*, 466 U.S. at 689. The court must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*; *see also Bell v. Cone*, 535 U.S. 685, 702 (2002) ("tactical decision[s] about which competent lawyers might disagree" do not qualify as objectively unreasonable).

Adams hasn't established that his trial counsel's performance was deficient. Adams asserts that his attorney refused to allow Adams to speak on his own behalf at sentencing. But the sentencing transcript shows that counsel

---

[1] In identifying the grounds for reducing his sentence, Adams limits the identified sentencing-related errors to the rejection of the 120-month stipulated sentence and disparity of sentences between Adams and his co-defendants. But the exhibits to Adams' § 2255 motion also reference the First Step Act's recidivism reduction provisions and argue that Adams is entitled to safety valve relief. (Doc. 1, pp. 45–48). The First Step Act's recidivism reduction programs do not entitle defendants to have their sentences reduced by the sentencing judge. *See* 18 U.S.C. § 3631. And safety valve relief is for certain defendants convicted of controlled substance offenses, *see* 18 U.S.C. § 3553(f), not a defendant like Adams convicted of health care fraud, mail fraud, kickback, and money laundering crimes.

told the court that Adams would like to "make a comment to the court." (Doc. 1, p. 31). So Judge Coogler offered Adams an opportunity to speak:

> THE COURT: All right. Anything you want to say in mitigation or otherwise before I pronounce the sentence of law upon you?
>
> MR. ADAMS: Me?
>
> THE COURT: Yes.
>
> MR. ADAMS: I just want to say thank you for giving me a chance to resolve this today. Thank you.
>
> THE COURT: You're welcome.

(*Id.*, p. 33).

And counsel's decision to not allow Adams' friend, Kris Skaggs, testify at sentencing was merely a strategic decision "about which competent lawyers might disagree." *Bell*, 535 U.S. at 702. Because Adams agreed to a 170-month stipulated sentence, nothing Skaggs said could lower his sentence. And it would not be objectively unreasonable for counsel to think that anything Skaggs said had more potential to hurt rather than help Adams because it could be viewed as refusing to accept responsibility or breaching Adams' agreement with the Government to serve a 170-month sentence.

Adams also hasn't shown that counsel's failure to object to the 170-month sentence was objectively unreasonable. In his sentencing memo, counsel requested that Adams receive the 120-month stipulated sentence that the parties had originally agreed upon. (Doc. 256 in Case No. 6:19-cr-219). After Judge Coogler rejected the parties' agreed-to sentence, Adams was informed that he was free to go to trial or make a different plea agreement with the Government. (Doc. 1, pp. 29–30). Adams then told the court that he had accepted a plea agreement with a 170-month stipulated sentence:

> THE COURT: And it's my understanding that you and the government have got some sort of plea that the only thing that will change will be the amount of time you will spend in prison. Is that correct?

| | |
|---|---|
| AUSA: | Yes, your honor. |
| THE COURT: | And what is that? |
| AUSA: | 170 months. |
| THE COURT: | Do you agree to that plea? |
| MR. ADAMS: | Yes, sir. |
| THE COURT: | Do you understand that if you agree to that, all the rest of the terms and conditions of the plea agreement, the facts stated in it, all that will remain the same? The only change will be instead of 120 months it will be 170 months. Do you have any questions about that? |
| MR. ADAMS: | No, your honor. |
| THE COURT: | Now, do we have an amended plea agreement that is binding on the court for 170 months? Defense? |
| DEFENSE COUNSEL: | That is correct, your honor. |
| THE COURT: | Government? |
| AUSA: | Yes, your honor. |

(*See id.*, pp. 30–31).

Thus, it wasn't objectively unreasonable for counsel to fail to object to the 170-month sentence or argue that a shorter sentence was more appropriate. Adams made clear that he had agreed to a 170-month stipulated sentence to avoid going to trial. So objecting to the 170-month sentence would have only risked a finding that Adams had breached his plea agreement.

Finally, Adams has not established that it was deficient performance for counsel to fail to object to the idea that the other Global-affiliated pharmacies were sham companies because Adams hasn't shown that this issue was relevant to his plea agreement or sentence.

2. *Prejudice*: Even if Adams' counsel's performance was deficient, Adams hasn't shown that he was prejudiced by his counsel's deficient performance. *Strickland*'s prejudice prong requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694.

Adams, who knowingly and voluntarily pleaded guilty and stipulated to a 170-month sentence, hasn't shown that his attorney's alleged deficiencies affected the validity of his guilty plea or the length of his sentence. Thus, Adams' ineffective assistance of counsel claims fail.

## III.    Motion for Appointment of Counsel

In his motion for appointment of counsel, Adams says that he mainly seeks counsel to argue that he is entitled to a reduced sentence under Amendment 821 of the United States Sentencing Guidelines. (*See* Doc. 7). Adams also says that he seeks counsel to make the intended fraud loss vs. actual fraud loss argument that Adams sought to add in his second motion for leave to amend. (*See id.*). The court will rule on Adams' 821 Amendment arguments in an order in Adams' closed criminal case as Adams has filed two motions for a sentence reduction based on Amendment 821. And as explained, Adams' intended fraud loss vs. actual fraud loss claim is time-barred.

Plus, there is no statutory or constitutional right to counsel in a § 2255 proceeding. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). While § 2255(g) allows for the appointment of counsel in a § 2255 proceeding, the appointment of counsel is governed by 18 U.S.C. § 3006A. *See* 28 U.S.C. § 2255(g). Under § 3006A, the court may appoint counsel in a § 2255 proceeding whenever "the interests of justice so require." *See* 18 U.S.C. § 3006A(a)(2). Because Adams' claims for § 2255 relief lack merit, the court finds that the interests of justice do not require the court to appoint him counsel. The court will thus **DENY** Adams' motion for counsel (doc. 7).

## IV.  Evidentiary Hearing

A § 2255 petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015). But no evidentiary hearing is required if "the § 2255 motion and records of the case conclusively show that the prisoner is entitled to no relief." *Id.* (quotations omitted). As explained above, the records in Adams' criminal case establish that he isn't entitled to relief on his § 2255 claims. So the court will deny Adams' motion without holding an evidentiary hearing.

## CONCLUSION

For these reasons, the court **DENIES** Adams' motion for appointment of counsel (doc. 7) and motions to amend his § 2255 motion to add new claims for relief (docs. 4, 10). The court **DISMISSES WITH PREJUDICE** the claims raised in Adams' original § 2255 motion (doc. 1).

Rule 11 of the Rules Governing § 2255 Proceedings requires the court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *See* Rule 11, Rules Governing § 2255 Proceedings. The court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this showing, a "petitioner must demonstrate that a reasonable jurist would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations omitted). The court finds that Adams' claims fail to satisfy either standard. So the court will not issue a certificate of appealability. The court will enter a separate final order that carries out this ruling and closes this case.

**Done** on July 29, 2025.

_____

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE

22